PD-0738-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/3/2015 9:25:36 AM
Accepted 9/3/2015 9:37:31 AM
ABEL ACOSTA
CLERK

**No. PD-0738-14**

IN THE
TEXAS COURT OF CRIMINAL APPEALS

**THE STATE OF TEXAS,
PETITIONER,**

**v.**

**JOSEPH GREEN,
RESPONDENT.**

ON PDR FROM THE FOURTH
COURT OF APPEALS

**AMICUS CURIAE BRIEF BY DISTRICT ATTORNEY FOR THE
105TH JUDICIAL DISTRICT OF TEXAS**

Douglas K. Norman

State Bar No. 15078900

Assistant District Attorney

105th Judicial District of Texas

901 Leopard, Room 206

Corpus Christi, Texas 78401

(361) 888-0410

(361) 888-0399 (fax)

douglas.norman@nuecesco.com

Attorney for Amicus Curiae

**STATEMENT OF COMPLIANCE WITH TEX. R. APP. P. 11**

The present amicus curiae brief is filed by the District Attorney's Office for the 105th Judicial District of Texas, in accordance with the requirements of Texas Rule of Appellate Procedure 11. No fee has been paid or will be paid for the preparation of this brief. The certificate of service attached to the back page of this brief certifies that copies have been mailed to all parties.

# TABLE OF CONTENTS

STATEMENT OF COMPLIANCE WITH TEX. R. APP. P. 11 ..................... i

INDEX OF AUTHORITIES ...................................................................... iii

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................. 2

**The Fourth Court of Appeals erred in concluding that the trial court improperly defined the terms "penetration" and "female sexual organ" in the jury charge on aggravated sexual assault.** .......................................... 2

    **I. Proper Jury Charge Definitions.** ...................................................... 2
        *A. Technical Terms.* ........................................................................ 3
        *B. Arbitrary Application.* ............................................................... 5

    **II. Sexual Assault Terms.** .................................................................... 5
        *A. Legal History.* .......................................................................... 6
        *B. Lack of "Common Parlance" Definition.* .............................. 8
        *C. Policy Considerations.* ........................................................... 9

CONCLUSION........................................................................................ 11

RULE 9.4 (i) CERTIFICATION .............................................................. 11

CERTIFICATE OF SERVICE ................................................................. 12

# INDEX OF AUTHORITIES

## Cases

*Ball v. State*, 163 Tex. Crim. 214, 289 S.W.2d 926 (1956)............................7

*Capps v. State,* 171 Tex.Crim. 579, 352 S.W.2d 833 (1962). ........................2

*Celis v. State*, 416 S.W.3d 419 (Tex. Crim. App. 2013). ...........................2-4

*Clark v. People*, 224 Ill. 554, 79 N.E. 941. ....................................................8

*Clark v. State*, 558 S.W.2d 887 (Tex. Crim. App. 1977). ...............................7

*Cornet v. State*, 359 S.W.3d 217 (Tex. Crim. App. 2012). ............................6

*Denton v. State,* 911 S.W.2d 388 (Tex. Crim. App. 1995)..............................2

*Flannery v. State*, 135 Tex. Crim. 235, 117 S.W.2d 1111 (1938)...................8

*Green v. State*, 434 S.W.3d 734 (Tex. App.—San Antonio 2014, pet. granted). ...............................................................................................................6

*Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012).........................2-5

*Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639 (Tex. Civ. App.-Dallas 1976, writ ref'd n.r.e.). ....................................................................................4

*Lynch v. State*, 150 Tex. Crim. 57, 199 S.W.2d 780 (1947). .........................7

*Medford v. State,* 13 S.W.3d 769 (Tex. Crim. App. 2000).........................2-5

*Mirick v. State*, 83 Tex. Crim. 388, 204 S.W. 222 (1918)......................... 7, 8

*State v. Nash*, 83 N.H. 536, 145 A. 262........................................................7

*Pendell v. State*, 158 Tex.Cr.R. 119, 253 S.W.2d 426 (1952)........................7

*Russell v. State*, 665 S.W.2d 771 (Tex. Crim. App. 1983)..............................3

*Sanders v. State*, 127 Tex. Crim. 55, 75 S.W.2d 116 (1934). .........................7

*Sherbert v. State*, 531 S.W.2d 636 (Tex. Crim. App. 1976)...........................7

*Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Examiners*, 254 S.W.3d 714 (Tex. App.—Austin 2008, pet. denied). ...............................4

*Vernon v. State,* 841 S.W.2d 407 (Tex. Crim. App. 1992)...............................2

*Watkins v. State*, 78 Tex. Crim. 65, 180 S.W. 116 (1915). .............................7

**Statutes & Rules**

Tex. Gov't Code § 311.011. ...............................................................................3

Tex. Pen. Code § 1.05. ......................................................................................3

Tex. Pen. Code § 21.11. ................................................................................ 10

Tex. Pen. Code § 22.01. ................................................................................ 10

Tex. Pen. Code § 22.011. ..................................................................................5

Tex. Pen. Code § 22.021. ........................................................................... 5, 10

Tex. Code Crim. Proc. art. 36.13. .....................................................................9

Tex. Code Crim. Proc. art. 36.14. .....................................................................2

The Penal Code of 1925, Art. 1183. .................................................................7

1 Wharton's Crim. Law (11th Ed.) § 697. .........................................................8

10 Encyc. of Ev. p. 580. ....................................................................................8

2 Bishop's New Crim. Law, § 1132. ..................................................................8

iv

NO. PD-0738-14
(Appellate Court Cause No. 04-12-00830-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| JOSEPH GREEN, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S BRIEF

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

## PRELIMINARY STATEMENT

The District Attorney for the 105th Judicial District of Texas has a special interest in the resolution of this case because of an aggravated sexual assault case with similar issues from the 214th District Court of Nueces County, which is now pending before the Thirteenth Court of Appeals as *Victor Sanchez v. State of Texas*, No. 13-14-00440-CR (Tex. App.—Corpus Christi), and in which the appellant has raised a similar challenge to the trial court's definition in the jury charge of the terms "penetration" and "sexual organ."

1

**ARGUMENT**

**The Fourth Court of Appeals erred in concluding that the trial court improperly defined the terms "penetration" and "female sexual organ" in the jury charge on aggravated sexual assault.**

**I. Proper Jury Charge Definitions.**

The trial court must instruct the jury on statutorily defined terms as the law applicable to the case. *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) (citing Tex. Code Crim. Proc. art. 36.14). By contrast, it is generally impermissible to instruct on terms not statutorily defined, and the trial court instead must permit the jury to construe them according to the rules of grammar and common usage. *Celis*, 416 S.W.3d at 433 (citing Tex. Gov't Code § 311.011 and *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012)). Such words are to be understood as ordinary usage allows and jurors may freely read them to have any meaning which is acceptable in common parlance. *See Kirsch*, 357 S.W.3d at 650; *Medford v. State,* 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *Denton v. State,* 911 S.W.2d 388, 390 (Tex. Crim. App. 1995); *Vernon v. State,* 841 S.W.2d 407 (Tex. Crim. App. 1992). The trial court is not required, or allowed, to define them in the jury charge because they are "commonly and ordinarily understood by people generally." *Capps v. State,* 171 Tex.Crim. 579, 352 S.W.2d 833, 835 (1962); *see also Kirsch*, 357 S.W.3d at 650 (citing *Capps*).

2

To that end, the Court of Criminal Appeals has stated that, "[w]here there is no statutory definition of a term, the question of trial court's obligation to define the term depends on whether the term has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning." *Russell v. State*, 665 S.W.2d 771, 780 (Tex. Crim. App. 1983). In other words, no definition is required or allowed "when such word is used in its ordinary sense, and it is easily comprehended by everyone." *Id.* at 780.

*A. Technical Terms.*

However, a trial court may define a statutorily undefined term that has an established legal definition or that has acquired a technical meaning that deviates from its meaning in common parlance. *Celis*, 416 S.W.3d at 433 (citing *Medford,* 13 S.W.3d at 771–72 and Tex. Gov't Code § 311.011(b)). The Code Construction Act provides that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code § 311.011 (b); *see also* Tex. Pen. Code § 1.05 (b) (applying this provision of the Code Construction Act to the Penal Code).

Terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the

3

words used have a well-known common law meaning, are considered as having been used in their technical sense. *Kirsch*, 357 S.W.3d at 650 (citing *Medford,* 13 S.W.3d at 772).

In *Celis*, for example, the Court of Criminal Appeals found that, for purposes of practicing law, the term "in good standing" with the State Bar was a technical term because it has acquired a peculiar and appropriate meaning in the law. 416 S.W.3d at 433. In *Kirsch,* however, the Court refused to allow a charge definition of "operate" in a DWI case because of the absence of any controlling case law dictating any particular definition of "operate." 357 S.W.3d at 648.

Specifically, with regard to anatomical terms that might be commonly understood in general, but that have a special meaning in the context in which they are used in a statute, such as the term "foot" as used in defining the scope of the practice of podiatry, the courts have interpreted it as a technical term and looked to medical definitions. *See Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Examiners*, 254 S.W.3d 714, 720-21 (Tex. App.—Austin 2008, pet. denied); *see also Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639, 642–43 (Tex. Civ. App.-Dallas 1976, writ ref'd n.r.e.) (explaining that when a statutory term has technical meaning, court will look to the particular art, science, or trade from which it was taken

to ascertain its meaning).

### B. Arbitrary Application.

In deciding which terms are common and understandable without definition in the charge, and which are technical terms requiring definition, the Court of Criminal Appeals also takes into consideration the risk "that jurors may arbitrarily apply an inaccurate definition to the term," and whether "an express definition is required to assure a fair understanding of the evidence." *Kirsch*, 357 S.W.3d at 650. In *Medford*, the Court of Criminal Appeals stated:

> "Arrest" is a technical term possessing a long, established history in the common law, and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest. Justice would be better served, and more consistently applied, if jurors were provided a precise, uniform definition to guide their determination whether the particular circumstances at issue constituted a completed arrest.

*Id.* at 772.

## II. Sexual Assault Terms.

The present sexual assault and aggravated sexual assault statutes criminalize, in pertinent part, the "penetration" of, or "contact" with, the "sexual organ" of the victim in a variety of different ways specified under the statutes. *See* Tex. Pen. Code § 22.011 (a) & Tex. Pen. Code § 22.021 (a) (Added by Acts 1983, 68th Leg., p. 5312, ch. 977, § 3, eff. Sept. 1, 1983).

With little analysis, the San Antonio Court of Appeals held that

5

definitions of "female sexual organ" and "penetration" were improperly included in the jury charge and constituted an improper comment on the weight of the evidence. *Green v. State*, 434 S.W.3d 734, 738 (Tex. App.—San Antonio 2014, pet. granted). The State would argue that the *Green* opinion, which is presently under review by this Court, is wrong.

The terms in question are clearly technical ones with a long history in Texas law, they lack common definition or consensus as to meaning in the legal context of a sexual offense, and a failure to define them in the charge would create a real and substantial danger of arbitrary results.

### A. *Legal History.*

The Court of Criminal Appeals has recently stated that "penetration occurs when there is tactile contact beneath the fold of complainant's external genitalia," and that "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact, and therefore constitutes penetration in the context of sexual assault." *Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012) (citations omitted). This is consistent with a long history of similar definitions of penetration with regard to the present sexual assault statutes and prior rape statutes criminalizing essentially the same conduct under the guise of "carnal

knowledge."[1]

In spite of significant statutory changes, substituting sexual intercourse and various more specific acts of contact or penetration of the female sexual organ for the prior term "carnal knowledge," Texas cases have consistently retained the concept that penetration, however slight, is sufficient, and that penetration beneath the folds of the outer labia or vulva is enough to show a rape or sexual assault. *See Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977); *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976); *Ball v. State*, 163 Tex. Crim. 214, 217, 289 S.W.2d 926, 928 (1956); *Pendell v. State*, 158 Tex.Cr.R. 119, 253 S.W.2d 426 (1952); *Lynch v. State*, 150 Tex. Crim. 57, 58, 199 S.W.2d 780 (1947); *Sanders v. State*, 127 Tex. Crim. 55, 58, 75 S.W.2d 116, 117 (1934); *Mirick v. State*, 83 Tex. Crim. 388, 393, 204 S.W. 222, 225 (1918); *Watkins v. State*, 78 Tex. Crim. 65, 66, 180 S.W. 116, 117 (1915). Some Court of Criminal Appeals cases even cite cases from other states and nationally recognized treatises employing the same concepts concerning the definition of rape and sexual assault. *See Ball*, 289 S.W.2d at 928 (citing *State v.*

---

[1] The Penal Code of 1925 provided, in pertinent part, that "Rape is the carnal knowledge of a woman without her consent obtained by force, threats or fraud …." Art. 1183 (available at Texas State Law Library, http://www.sll.texas.gov/assets/pdf/historical-codes/1925/1925pen5.pdf).

*Nash*, 83 N.H. 536, 145 A. 262, and *Clark v. People*, 224 Ill. 554, 79 N.E. 941) and *Mirick*, 204 S.W. at 225 (citing 1 Wharton's Crim. Law (11th Ed.) § 697; 10 Encyc. of Ev. p. 580; 2 Bishop's New Crim. Law, § 1132).

Accordingly, the Court of Criminal Appeals long ago approved of the following jury instruction in a rape case:

> You are further instructed that the slightest penetration of the body of the female by the sexual organ of the male is sufficient; it is unnecessary that the penetration should be perfect; nor that there should be an entering of the vagina or rupture of the hymen; the entering of the vulva or labia is sufficient.

*Flannery v. State*, 135 Tex. Crim. 235, 240-41, 117 S.W.2d 1111, 1114-15 (1938).

### B. Lack of "Common Parlance" Definition.

The "penetration of the female sexual organ," involves subtle distinctions that are irrelevant to acts of love and that only come into play in connection with criminal conduct. Lovers certainly do not speak of their acts of affection in these terms, nor do they draw the sort of distinctions involving the boundaries of the organs in question or what does or does not constitute penetration. Such technical distinctions only come into play in the context of a criminal offense or, to some degree, in the equally technical and specialized context of medical science. Accordingly, it would seem unlikely that the average juror would have had occasion to discuss or consider what

amounts to penetration of the female sexual organ outside of the trial at issue.

*C. Policy Considerations.*

The question of what words to judicially define and what words to leave for the jury itself to define within a range of common meanings boils down to one of whether that definition falls on the side of a legal issue within the realm of the courts, or a factual issue within the realm of the jury. *See* Tex. Crim. Proc. Code art. 36.13 ("the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby"). In other words, did the legislature intend to allow the jury some latitude to decide for itself whether to employ a more, or less, restrictive definition to the particular facts and circumstances under consideration. Or, did the legislature intend to incorporate a specialized legal meaning for the term which the jury would be bound to follow. The answer to that question is clear when the legislature itself defines the term, but less so when the term is left undefined.

Presumably, part of the justification for leaving the jury to define common terms is to allow them to bring all the facts of the case to bear on those definitions in order to reach a just result. For example, refusing to bind the jury to any particular definition of "operate" for purposes of a DWI

9

charge gives the jury leeway to consider the manner and extent to which the defendant's actions, under the unique facts of the case in question, actually placed other drivers in danger in a manner that our DWI laws are meant to combat. However, in cases of sexual assault or indecency, the surrounding facts could have little practical impact in determining whether the touching in question amounted to penetration or contact with a sexual organ of the nature that the legislature intended to punish. Touching or breaking the fold in one case is about the same as touching or breaking the fold in any other, and it is hard to find justification for disparate treatment of the same acts based on arbitrarily allowing one jury to define contact or penetration in one manner and another jury to define it in a different manner.

Moreover, differing definitions of penetration and the extent of the "female sexual organ" may mean the difference between 25 years to life for an aggravated sexual assault of a child, Tex. Pen. Code § 22.021 (f) (1), a second-degree indecency with a child by sexual contact, Tex. Pen. Code § 21.11 (d), and possibly only a Class C misdemeanor assault by offensive contact. Tex. Pen. Code § 22.01 (c).

For all of these reasons, the trial court properly defined the terms in question in the jury charge.

10

## CONCLUSION

The District Attorney's Office for the 105th Judicial District of Texas submits the foregoing Amicus Curiae Brief for the Court's consideration in the present case.

.

Respectfully submitted,

/s/ *Douglas K. Norman*

_____

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 2,171.

/s/ *Douglas K. Norman*

_____

Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that copies of this brief were e-mailed on September 3, 2015, to the attorney for Mr. Green, Mr. Tomas Ramirez, the attorney for the State, Mr. Edward F. Shaughnessy, III, and the State Prosecuting Attorney.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman